**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 12-95-DLB-CJS**

**TAYLOR BOTKIN**                                                                                    **PLAINTIFF**

**vs.**               **ORDER ADOPTING REPORT & RECOMMENDATION**

**TOKIO MARINE & NICHIDO FIRE INSURANCE CO., LTD.**               **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I.  INTRODUCTION

The matter is presently before the Court upon the Order and Report and
Recommendation ("R&R") of the Magistrate Judge (Doc. # 50), Defendant's Motion for
Leave to File Third-Party Complaint (Doc. # 35), and Plaintiff's Motion for Order for Oral
Arguments on Defendant's Motion for Leave to File Third-Party Complaint (Doc. # 44).  In
her R&R, the Magistrate Judge recommends that the Court deny both motions.  Defendant
has filed Objections to the R&R (Doc. # 51), and Plaintiff has filed a Response to
Defendant's Objections (Doc. # 52).  Thus, the Magistrate Judge's R&R and Defendant's
Objections are now ripe for the Court's review.

Upon review, Defendant's Objections lack merit and will be **overruled**, Defendant's
Motion for Leave to File Third-Party Complaint (Doc. # 35) and Plaintiff's Motion for Order
for Oral Arguments on Defendant's Motion for Leave to File Third-Party Complaint (Doc.
# 44) will be **denied**, and the R&R will be **adopted** as the Court's opinion.

1

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Magistrate Judge set forth the relevant facts and procedural background of this

case in her R&R, and the Court restates it in full here:

> On March 16, 2010, Plaintiff was injured in a car accident when the taxi in which he was riding collided with a vehicle driven by Tarik Uzmezler.  It appears undisputed that Uzmezler caused the accident.  Plaintiff alleged that at the time of the accident Uzmezler was driving under the influence of alcohol. (R. 1-1, ¶ 7).  Plaintiff settled his claim against Uzmezler.

> At the time of the accident Plaintiff was insured by Defendant under a policy of insurance that contained underinsured motorist (UIM) coverage. Plaintiff alleges that, pursuant to Kentucky Revised Statute § 304.39-320, he notified Defendant of the settlement with Uzmezler/State Farm. Defendant allegedly waived its subrogation rights against Uzmezler and consented to the settlement.

> On March 14, 2012, Plaintiff filed suit against Defendant in Kenton Circuit Court seeking payment under the UIM provision of his policy for damages he alleges he sustained in excess of the amount he recovered from Uzmezler's insurance carrier. ®. 1-1). On April 13, 2012, Defendant removed the action to this Court on the jurisdictional basis of diversity of citizenship. ®. 1).

> On June 5, 2012, the presiding District Judge entered a scheduling order setting December 17, 2012, as the deadline for Defendant to file a motion to amend pleadings or join additional parties. ®. 17). On December 20, 2012, this Court granted the parties' joint request to extend their deadline to amend pleadings or join parties until January 7, 2013. ®. 31). On January 7, 2013, Defendant filed a motion for a further extension of time to join parties or amend pleadings, stating it was still awaiting a complete response to its subpoena from the Fort Lauderdale Police Department. ®. 32). Plaintiff objected to any further extension, explaining Defendant has had the police report for more than two years. Further, Plaintiff took note that Defendant waited until December 13, 2012, to issue its subpoena despite the impending deadlines. ®. 33). The Court granted Defendant until January 22, 2013, to move for leave to amend pleadings or join parties, but specifically cautioned that any such motion must contain an appropriate supporting memorandum as to why the proposed amendment and/or joinder is warranted. ®. 34).

> On January 22, 2013, Defendant filed the pending Motion for Leave to File Third-Party Complaint, attaching the proposed Third-Party Complaint. ®. 35). In the proposed Third-Party Complaint, Defendant asserts that Uzmezler was employed at Ocean Manor Resort, owned by AFT Management Corp. (AFT),

2

and that on the night of the accident, Uzmezler was a patron of the resort's Tiki Lounge. Defendant alleges that employees of the lounge served alcohol to Uzmezler after he had become noticeably intoxicated and knowing that he was habitually addicted to alcohol, in violation of Florida's dram shop statute. Thus, Defendant asserts it is entitled to bring a claim for indemnity against AFT and further asserts it is entitled to a jury instruction permitting the jury to apportion fault between AFT and Uzmezler for purposes of determining whether Plaintiff is entitled to UIM benefits.

Plaintiff opposes Defendant's filing of a third-party complaint, arguing Defendant is not entitled to indemnity from AFT nor is it entitled to an apportionment instruction. Moreover, Plaintiff argues that even if Defendant is entitled to pursue an indemnity claim against AFT, it should do so in a separate action, as Plaintiff will be prejudiced by permitting such a claim here.

(Doc. # 50, at 1-3).

## III.   ANALYSIS

### A.   Standard of Review

Because Defendant's motion (Doc. # 35) is non-dispositive, the Court reviews the Magistrate's R&R to determine if any matter properly objected to is clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.");  Fed. R. Civ. P. 72(a) (stating that as to non-dispositive matters, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) ("A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of § 636(b)(1)(A).").

**B.     The Magistrate Judge's ruling that AFT and Uzmezler are not *in pari delicto* under Kentucky law was not contrary to law**

Under Kentucky law, "[a]pportionment of liability arises 'when two or more joint tortfeasors are guilty of concurrent negligence of substantially the same character which converge to cause the plaintiff's damages.'  Such joint tortfeasors are said to be 'in pari delicto.'" *Texas Capital Bank, N.A. v. First American Title Ins. Co.*, No. 3:09-cv-661-H, 2012 WL 443460, at *2 (W.D. Ky. Feb. 10, 2012) (quoting *Degener v. Hall Constr. Corp.*, 27 S.W.3d 775, 778 (Ky. 2000)).  Apportionment must be distinguished from the separate and distinct concept of indemnity.   Indemnity arises in two categories of cases:

> (1) [w]here the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Degener*, 27 S.W.3d at 780.  "Unlike the right to contribution, the right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto."  *Id.*  "Indemnity reflects the equitable notion that even where two tortfeasors cause injury to another, in certain circumstances the more 'responsible' or more 'culpable' tortfeasor should bear the entire cost of the injury." *Asher,* 2007 WL 3046064, at *4 (citation omitted).

In her R&R, the Magistrate Judge determined that AFT and Uzmezler are not *in pari delicto* under Kentucky common law and therefore Defendant is not entitled to implead AFT under Federal Rule of Civil Procedure 14(a) for apportionment purposes.  (Doc. # 50, at 4-8).  Specifically, the Magistrate Judge found that AFT and Uzmezler did not commit concurrent acts of substantially the same character since Uzmezler drank to intoxication

4

and then drove his vehicle in reverse, striking the taxi in which Plaintiff was riding and allegedly injuring him, whereas AFT served Uzmezler alcohol earlier in the day.  In finding that AFT and Uzmezler are not *in pari delicto*, the Magistrate Judge relied in part on the following holding from the Kentucky Court of Appeals' opinion in *Jackson v. Tullar*:

> [A]pportionment between the intoxicated tortfeasor and the dram shop is improper because the actions that give rise to liability–directly causing injury and improperly serving alcohol to someone who later causes injury, respectively–do not constitute concurrently negligent acts. Rather, they are separate and independent actions of two fundamentally different characters.

285 S.W. 3d 290, 296 (Ky. Ct. App. 2007).

In its Objections, Defendant asserts that this holding is no longer good law because it was based on Section 1 of Kentucky's dram-shop statute, K.R.S. § 413.241, which the Kentucky Court of Appeals subsequently struck down as unconstitutional in *Taylor v. King*, 345 S.W.3d 237 (Ky. 2010).  Section 1 had provided that the "consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury . . . inflicted by an intoxicated person upon himself or another person." K.R.S. § 413.241(1).  As correctly summarized by the Magistrate Judge, in *Taylor*, the Kentucky Court of Appeals held that "'the legislative finding regarding proximate causation in KRS 413.241(1) intrudes upon the fact-finding roles of the courts, in violation of . . . the Kentucky Constitution,' thus holding the statute unconstitutional to the extent it prevents a fact-finder from determining whether an injury is a foreseeable consequence of the dram shop's improper sale of alcohol." (Doc. # 50, at 5) (citing *Taylor*, 345 S.W.3d at 243-44). Notwithstanding *Taylor*'s holding, the Magistrate Judge held that *Jackson*'s *in pari delicto* holding is still good law because, in her view, it is not based solely on the dram-shop statute, but on Kentucky common law principles of apportionment and comparative fault

5

as well.

Defendant disagrees. It believes that the *Jackson in pari delicto* holding was based purely on the dram-shop statute, and that the Magistrate Judge erred in relying on it. It posits that in the wake of *Taylor*, Kentucky common law now controls the issue of whether a drunk driver and a dram shop are *in pari delicto*. To accurately discern the common law view on this issue, Defendant asserts that the Magistrate Judge should have looked to *Grayson Fraternal Order of Ealges, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (Ky. 1987) and *Watts v.K, S & H, A Partnership*, 957 S.W.2d 233 (Ky. 1998). Those cases, Defendant posits, suggest without holding that under common law the Kentucky Supreme Court would permit apportionment between a drunk driver and a dram shop.

In *Grayson*, a bartender unlawfully served alcoholic beverages to two patrons, Jacky Bailey and Homer Horton, in the dry territory of Carter County, Kentucky. *Grayson*, 736 S.W.2d at 329. He later forced them to get into Horton's car and leave the parking lot so that he could close the gate. *Id.* Either Horton or Bailey then crashed Horton's car into a police vehicle, killing one officer and injuring another. *Id.*

On appeal, the Kentucky Supreme Court held that a dram shop could be held liable for breach of a common-law duty of care in serving alcohol to persons already under the influence of alcohol, who then injure a third-party due to their intoxication. *Id.* at 333-34. Defendant points to a passage from *Grayson* in which the court stated:

> By continuing to supply alcohol to a person who is noticeably impaired when the seller knows or should know from the attendant circumstances that the buyer is likely to exit the establishment behind the wheel of an automobile, the seller is as much a wrongdoer as the buyer, often times more so because at least the seller is a sober contributor to the intoxication process . . . . The only common sense answer to the victim is common law liability for both.

6

*Grayson*, 736 S.W.2d at 332.  However, Defendant admits that this passage is merely dicta because the *Grayson* court only decided that "a claim grounded in dram shop liability state[s] a cause of action," and did not decide whether the dram shop and drunk driver are *in pari delicto*.  (Doc. # 51, at 12-13).  Still, Defendant argues that this passage constitutes persuasive authority of how the Kentucky Supreme Court would decide the *in pari delicto* issue under the common law, since it was decided prior to the Kentucky Legislature's enactment of the dram-shop statute.

Defendant also argues that the Magistrate Judge erred in failing to consider the Kentucky Supreme Court's holding in *Watts*.  In *Watts*, a minor passenger injured in a collision with a vehicle driven by an intoxicated minor brought a dram shop action against the owners of a liquor store that sold alcohol to the minor friend of the driver, who shared the alcohol with the driver.  *Id.* at 234-35.  The jury awarded the victim six million dollars and apportioned the damages 70% against the driver and 30% against the liquor store owners.  *Id.* at 234.  The Kentucky Court of Appeals reversed the judgment, for reasons beyond the scope of this Order.  The Kentucky Supreme Court then reinstated the judgment, in part because it held that the trial court properly permitted the jury to determine whether the liquor store owners violated their statutory duty not to sell alcohol to minors, and whether "that violation led to a series of events that could have been foreseen."  *Id.* at 239.

The court reached this holding by applying Kentucky common law because, even though the case was decided after Kentucky enacted its dram-shop statute, the action had been filed before the effective date of the statute.  *Id.* at 238, n.1.  According to Defendant, "*Watts* shows that, under the common law, Kentucky courts allow juries to allocate fault

7

between drunk drivers and dram shops because they are concurrent tortfeasors *in pari delicto*." (Doc. # 51, at 15). Defendant also considers it significant that the court looked to *Grayson* "for the standard by which [the] case [was] to be judged." *Id.* at 238. Defendant thus posits that *Watts* is the best indicator of how the Kentucky Supreme Court would resolve the *in pari delicto* issue under a pure common-law scheme.

The problem with Defendant's argument is that the Court is not faced with a pure common-law scheme. The Kentucky dram-shop statute is still partially operative. *Taylor* only struck down Section 1 of the statute, leaving in place the remaining sections, including Section 3. Section 3 states that "[t]he intoxicated person shall be primarily liable with respect to injuries suffered by third persons." K.R.S. § 413.241(3). This Section creates a right of indemnity on behalf of dram shops against intoxicated tortfeasors. *DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952, 957-58 (Ky. 1999). In *DeStock*, the appellees argued that sections (1) and (3) of the dram-shop statute were inherently inconsistent and thus ambiguous, since section (1) determined the drunk driver's negligence to be the proximate cause of any victim's injuries, while section (3) determined the drunk driver to be only primarily liable for those injuries. *Id.* at 957. The Kentucky Supreme Court held that the two sections could be read in harmony by distinguishing between causation and liability and reading the statute as whole. *Id.* Thus, even if a dram shop was found to be liable for the injuries inflicted by an intoxicated driver under Sections (1) and (2), it would be entitled to indemnity from the intoxicated driver under section (3) for any damages it was required to pay to the victim. *Id.* The court thus made clear that the Legislature's inclusion of section (3) in the statute "dispelled the suggestion in *Grayson* that the dram shop and the drunken driver ought to be considered in pari delicto." *Id.* In fact, the court held that it did not need

8

to decide "the policy issue of whether the dram shop ought to be deemed in pari delicto with the drunken driver or whether it ought to be only secondarily liable, because that policy issue was decided by the legislature when it enacted K.R.S. 413.241." *Id.* at 958.

Because Section 3 is still operative, *DeStock* is the best indicator of how the Kentucky Supreme Court would view the *in pari delicto* issue. Under *DeStock*, the Kentucky Supreme Court would most likely hold that a drunk driver and a dram shop are not in pari delicto, since the driver is primarily liable, and the dram shop is only secondarily liable with a right of indemnification against the driver. *Watts* is thus inapposite because it was decided solely on the common law, and not on the dram-shop statute. For all of these reasons, Defendant's objection is therefore overruled.

## C.   Alternatively, the balance of equities under Federal Rule of Civil Procedure 14(a) weighs against granting the motion

Assuming arguendo that the Kentucky Supreme Court would hold that a drunk driver and a dram shop are *in pari delicto*, the Court finds that the balance of equities under Federal Rule of Civil Procedure 14(a)(1) weighs against granting the instant motion.

As noted above, Federal Rule of Civil Procedure 14(a)(1) provides that "a defending party may, as third-party plaintiff, serve a summons and complaint on a non-party who is or may be liable to it for all or part of the claim against it." The defendant/third-party plaintiff must seek leave of court to implead a third-party defendant if more than 14 days have transpired since the defendant/third-party plaintiff filed its answer. Fed. R. Civ. P. 14(a)(1). "The decision of whether to grant a motion for leave to implead is a matter committed to the discretion of the district court, and the exercise of discretion is essentially a process of balancing the prejudices." *Asher v. Unarco Material Handling, Inc.*, No. 6:06-548-DCR,

9

2007 WL 3046064, at *4 (E.D. Ky. Oct. 16, 2007) (citing *Gen. Elec. Co. v. Irvin*, 274 F.2d 175, 178 (6th Cir. 1960) (additional citation and internal quotation omitted)).  "Competing interests includ[e] the avoiding of duplicative litigation versus ensuring that parties already before the court receive expeditious adjudication." *Asher*, 2007 WL 3046064 at *4 (citation omitted).

The Sixth Circuit has not enumerated the various factors courts may consider in determining whether to grant a motion for impleader under Rule 14(a), other than to hold that the promptness of a Rule 14(a)(1) motion to implead a third-party defendant is "an urgent factor governing the exercise of [the court's] discretion." *Irvin*, 274 F.2d at 178. However, other courts have considered the following factors: (1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; (4) prejudice to the original plaintiff. *Mechin v. Carquest Corp.*, No. 07-5824 (GEB)(ES), 2010 WL 3259808, at * 5 (D. N.J. Aug. 17, 2010) (citation omitted); *Doland v. Berrios*, No. 1:11-CV-1783, 2012 WL 6137489, at *2 (M.D. Pa. Dec. 11, 2012) (citation omitted).  Other courts have also considered "whether the moving party deliberately delayed or was derelict in filing the motion." *Capital Records, Inc. v. City Hall Records, Inc.*, No. 07 Civ. 6488(LTS)(KNF), 2008 WL 2811481, at *2 (S.D.N.Y. July 18, 2008) (citation omitted); *iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 74 (E.D.N.Y. Oct. 21, 2011) (citation omitted).

The Magistrate Judge found that the timing of the instant motion weighed against granting it.   The Court agrees.  Defendant twice moved for and was granted extensions of the Court's deadline for joining additional parties.  It then finally filed the instant motion on January 22, 2013, the very last day before expiration of the Court's extended deadline

to add new parties.  While Defendant's motion was thus technically timely, Plaintiff's cause of action had been pending for over ten months by that time.  Plaintiff filed its cause of action in state court on March 14, 2012, Defendant filed its Answer in state court on or about April 6, 2012, and Defendant removed to this Court on April 13, 2012.  The motion was also filed just nine days before the discovery deadline of January 31, 2013.   The Magistrate Judge found that the motion would thus delay discovery and entail further extensions of pre-trial deadlines because it would require additional depositions and other discovery. She noted that the Court was prepared to soon set a dispositive motion deadline.  While delay of discovery, without more, is not prejudicial, the Court agrees that it is a factor weighing against the instant motion.  Judge Danny Reeves reached a similar conclusion in *Asher v. Unarco Material Handling, Inc.*, No. 6:06-548-DCR, 2007 WL 2463326 at *3 (E.D. Ky. Aug. 28, 2007), where he held that "[a]lthough the current requests to join additional parties [under Rule 14(a)] do not violate the Court's Scheduling Order, it is clear that granting the parties' motions would require the parties to re-take depositions, delay pre-trial deadlines, and unnecessarily interject new issues into the litigation." So too here, granting the instant motion would cause unnecessary delay.

The Magistrate Judge also found that adding AFT would unnecessarily complicate this matter.  (*Id.*).  The Court agrees.  As an initial matter, it is unclear whether the Court would have personal jurisdiction over AFT, and thus the Court would have to resolve that dispute if AFT entered this action.  In addition, at this juncture, Plaintiff has already settled with Uzmezler and State Farm for $20,000, and Defendant consented to the settlement and waived its subrogation rights against Uzmezler.  This action for underinsured motorist benefits is thus concerned with quantifying the extent of Plaintiff's remaining damages.

11

Adding AFT to this matter would require a jury to decide whether AFT is liable for Plaintiff's injuries, and if so, to allocate fault between AFT and Uzmezler. Injecting dram-shop liability issues into this case would add an unnecessary layer of complexity that unduly complicates this relatively straightforward underinsured motorist benefits action. This factor weighs against granting the instant motion.

Moreover, Defendant either knew or should have known of AFT's role in serving alcohol to Uzmezler for over two years before it filed the instant motion. The Magistrate Judge noted in her R&R that according to Plaintiff, Defendant has had a copy of the police report for more than two years. (*Id.* at 2). Defendant has not objected to this statement of fact, and it appears to be true based upon the representations in Plaintiff's Response in Opposition to Defendant, Tokio Marine's Motion for Enlargement of Time to Join Parties or Amend Pleadings (Doc. # 33). In that brief, Plaintiff asserted that Plaintiff's Florida counsel faxed the Fort Lauderdale Police Department's "Crash Report" from the accident at issue to Defendant on April 7, 2010. (*Id.* at 3). Plaintiff attached the fax itself, which demonstrates the truth of its assertion. (*See* Doc. # 33-2). The Crash Report indicates that Uzmezler was taken to the hospital following the accident for a blood draw, which as Plaintiff notes, is an obvious indication that Uzmezler was suspected of drinking. (*Id.* at 4).

Plaintiff also sent Defendant an "Offense Incident Report" as part of its June 26, 2012 Initial Disclosures. (Doc. # 34-4). The Report makes it abundantly clear that the police suspected Uzmezler of driving while intoxicated. It details how police smelled alcohol on his breath, observed that he slurred his speech, and asked him to submit to a blood draw at the hospital to determine his blood alcohol level. (*Id.* at 3-4). It also includes Uzmezler's admission that he had been drinking before the crash. (*Id.*).

12

Despite having this information regarding Uzmezler's drinking, Defendant did not file the instant motion until January 22, 2013.  Defendant argues that it did not have sufficient facts to bring a third-party complaint against AFT until that time because the Fort Lauderdale Police Department had not completely responded to its subpoena.  But Defendant waited until December 13, 2012, to issue the subpoena.  Defendant has not explained in the instant motion, in any of the briefing, or in its Objections, why it waited so long to investigate AFT's involvement given its knowledge (constructive, or otherwise) of Uzmezler's drinking.  The Court thus finds that Defendant unduly delayed or was derelict in filing the instant motion, and that this delay weighs against granting it.  *See Capital Records, Inc.,* 2008 WL 2811481, at *2 (whether moving party "deliberately delayed or was derelict in filing the motion" weighs against granting motion to implead); *iBasis Global, Inc.,* 278 F.R.D. at 74 (same);  *Korex v. Dynamic Air, Inc.*, 1987 U.S. Dist. LEXIS 15423, at *8-9. (E.D. Mich. April 20, 1987) (denying motion to implead in part because the defendant failed to show good cause for waiting 20 months to add the proposed third-party defendants, despite its long-standing knowledge of those parties' involvement in the disputed transaction at issue).

Additionally, denying the instant motion would not prejudice Defendant because it would be free to bring an indemnity action against AFT in Florida.  This would not require repetitious discovery because the parties have not yet engaged in discovery regarding dram shop issues or AFT, to the Court's knowledge.  What's more, Defendant does not even argue that having to pursue a separate indemnity action would be unduly burdensome.  By contrast, adding AFT to this action would delay Plaintiff's ability to have this matter adjudicated in a prompt fashion.

13

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)      Defendant's Objections to the R&R (Doc. # 51) are hereby **OVERRULED**;

(2)      The Order and Report and Recommendation of the Magistrate Judge (Doc. # 50) is hereby **ADOPTED** as the Findings of Fact and Conclusions of Law of the Court; and

(3)      Defendant's Motion for Leave to File Third-Party Complaint (Doc. # 35), and Plaintiff's Motion for Order for Oral Arguments on Defendant's Motion for Leave to File Third-Party Complaint (Doc. # 44) are hereby **DENIED**.

This 10th day of July, 2013.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\ORDERS\Cov12\12-95 Order adopting R&R and denying motion to implead third-party.wpd